UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

UNITED STATES OF AMERICA, <u>ex</u> <u>rel</u>.
MARIA A. MARTINEZ, M.D.,

and

COMMONWEALTH OF VIRGINIA, <u>ex</u> <u>rel</u>.
MARIA A. MARTINEZ, M.D.,

         Relator-Plaintiffs,

v.

VIRGINIA UROLOGY CENTER, P.C.,

         Defendant.

Action No. 3:09–CV–442

MEMORANDUM OPINION

I.  INTRODUCTION

THIS MATTER is before the Court on defendant Virginia Urology Center, P.C.'s (<u>hereinafter</u> "Virginia Urology") Motion to Dismiss plaintiff-relator Maria A. Martinez's (<u>hereinafter</u> "Martinez") Complaint.  (Doc. No. 13.)  Martinez is a former employee of Virginia Urology.  In her five-count Complaint, Martinez contends that Virginia Urology filed false Medicare and Medicaid claims in violation of state and federal laws (Counts I & II), retaliated against her in violation of these laws (Count III), and wrongfully terminated her

1

employment (Count IV).[1]  In its Motion to Dismiss, Virginia Urology contends that Martinez has failed to state a claim upon which relief can be granted with regard to these Counts.

For the reasons stated below, the Court finds that Virginia Urology's motion should be granted.

## II.  BACKGROUND

This matter is before the Court on a motion to dismiss, therefore the Court takes the facts in the light most favorable to Martinez but reserves its own judgment as to the plausibility of any inferences or legal conclusions drawn from them.  See Giarratano v. Johnson, 521 F.3d 298, 303 (4th Cir. 2008); see also Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).

### A.  Martinez's Pleadings

Martinez alleges that Virginia Urology is a Virginia corporation operating an ambulatory surgery center that provides services to recipients of Medicare and Medicaid benefits and receives payments through these programs from both the United States and the Commonwealth.  Martinez alleges that she is a physician and was employed for four years as an anesthesiologist by Virginia Urology.  During this time, Martinez alleges that she raised a number of concerns about record keeping and treatment practices at the center.  In or about March of 2005, Martinez allegedly brought these concerns to the attention of other doctors and practice administrator Terry W. Coffey.  Specifically, Martinez alleges that she showed Coffey a copy of a patient record in which an anesthesiologist had not certified that

---

[1]In a Count not challenged in this Motion, Martinez also claims that Virginia Urology breached her contract of employment (Count V).

he had completed the steps necessary to qualify the procedure as a "medically directed" under Medicare billing guidelines. Nevertheless, Martinez alleges, the record had been forwarded to the billing office with a notation that anesthesia had been "medically directed" and the claim had been submitted to Medicare as such, although the required certification had not been made. Martinez also allegedly showed Coffey a second record for a procedure which Martinez had cancelled over another anesthesiologist's objections due to an abnormal blood condition which had not been called to the surgeon's attention. Martinez alleges that Coffey refused to take the corrective actions she suggested.

Martinez's Complaint also contains separate allegations regarding the failure of surgeons to remain in the surgical suites during lithotripsy procedures.[2] She alleges that surgeons were neither physically present nor available to lend immediate assistance. Martinez alleges that she raised these concerns with several registered nurses in the surgical services unit and with Coffey. Martinez specifically alleges that particular doctors routinely failed to remain within the surgical suites and she allegedly brought these practices to Coffey's attention. Martinez alleges on information and belief that these services were billed to Medicare as "medically directed" through St. Mary's Hospital, an intermediary.

In June of 2007, Martinez allegedly presented Coffey with a proposal to handle all anesthesia services as a non-employee "contractor". Martinez alleges that this proposal was

---

[2] Lithotripsy is a procedure by which kidney stones may be broken up and removed from the urinary tract using sound waves, it is a non-invasive or minimally invasive process. See Rahmin A. Rabenou, M.D., Patient Guide to Kidney Stone Diagnosis, Treatment, and Prevention, NYU School of Medicine (available at: http://homepages.nyu.edu/~rabenr01/patient_guide_to_kidney_stone_di.htm).

3

rejected. Martinez further alleges that after returning from a previously planned vacation, she was placed on a period of administrative leave during which she was told to "think about" resigning and that if she did not resign, she would be terminated for cause. On July 16, 2007, Martinez alleges that she was presented with a severance agreement and escorted from the facility. Martinez alleges that she was never provided with "cause" for her termination, despite repeated requests for an explanation.

Building on her allegations of specific misconduct, Martinez contends that Virginia Urology's practices failed to comply with applicable regulations in two broad areas. First, she contends that anesthesiologists improperly certified that certain anesthesiology procedures were "medically directed" according to Medicare regulations. Martinez contends that under regulations set out at 42 C.F.R. § 415.110(b), an anesthesiologist seeking reimbursement for "medically directed" services must certify that they engaged in the "Seven Steps" outlined at 42 C.F.R. § 415.110(a). These steps include 1) preforming a pre-anesthetic examination and evaluation, 2) prescribing anesthesia, 3) personally participating in the most demanding procedures in the anesthesia plan, including induction and emergence, 4) ensuring that any procedures in the anesthesia plan he or she does not perform are performed by qualified individuals, 5) monitoring the course of anesthesia administration at frequent intervals, 6) remaining physically present and available for immediate diagnosis and treatment of emergencies, and 7) providing post-anesthesia care. See § 415.110(a)(1)(i)-(vii). Martinez contends that this is a prerequisite of payment under § 415.110(b). Martinez contends that the missing certifications and unnoticed medical

4

complications confirm that these requirements were not fulfilled.  Martinez also contends that the failure of the surgeons to properly supervise the lithotripsy procedures also raised similar billing concerns, as 42 C.F.R. § 410.27 requires that "directly supervised" surgical services be furnished at a facility where a physician or non-physician professional is on the same medical campus and is immediately available to furnish assistance and direction.  See 42 C.F.R. § 410.27(a)(iv)(A).  Finally, Martinez contends that her persistence in raising these concerns to Coffey and others is what led to her firing in 2007.

Martinez claims that by submitting bills to Medicare and Medicaid without the required certifications from the relevant physicians, Virginia Urology violated the False Claims Act ("FCA"), 31 U.S.C. § 3729 et seq.  Martinez also claims that these billings constituted false claims under the Virginia Fraud Against Taxpayers Act ("VFATA"), Va. Code § 8.01-216.1 et seq.  Martinez next claims that by firing her for opposing these practices, Virginia Urology has violated 31 U.S.C. § 3730(h) and Va. Code. 8.01-216.8, which prohibit retaliatory discharge for bring claims on behalf of the United States or Commonwealth.  Martinez finally claims that, by terminating her employment in this manner, Virginia Urology acted in violation of public policy embodied in the VFATA and the Reporting Requirements for Physicians set forth at Va. Code § 54.1-2909.

### B.  Posture of Pleadings and Motion to Dismiss

Martinez filed her Complaint as a qui tam action on July 13, 2009.  Pursuant to the FCA and VFATA, the filing was held in camera while the United States and the Commonwealth determined whether they would intervene.  Both the United States and

5

Commonwealth determined that they would not intervene and on January 27, 2010, the Complaint was unsealed by order of the Court. The matter has been fully briefed and argument was heard by the Court.

In its Motion to Dismiss, Virginia Urology argues that Martinez has failed to state a claim with regard to the first four counts in her Complaint. With regard to Count I, Virginia Urology argues that not every documentation problem establishes an FCA violation and that Martinez has failed to plead the alleged fraud with sufficient specificity. Virginia Urology also argues that Martinez has failed to specify the particular theory of FCA liability on which her claim regarding anesthesia and surgical services is based. With regard to Count II, Virginia Urology argues that Martinez has failed to allege a plausible claim under the VFATA both because she has failed to allege fraud with the required specificity and because she has failed to show that any claims were ever made on the Commonwealth. With regard to Count III, Virginia Urology argues that since Martinez does not allege that she filed any complaint or engaged in any action protected under either the FCA or the VFATA prior to her termination, she has failed to state a claim for retaliatory discharge. With regard to Count IV, Virginia Urology argues that because Maritnez has failed to show either that her actions were necessary for the advancement of some public policy or that there was a causal link between the acts in which she is alleged to have engaged and her firing, she cannot state a claim for a discharge contrary to public policy under Virginia law.

III.  DISCUSSION

A.  Standard of Review

A motion to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims set forth in the pleadings.  See Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009).  The sufficiency of a complaint is measured "by whether it meets the standards for pleading stated in Rule 8 (providing general rules for pleading ) [or] Rule 9 (providing rules for pleading special matters)."  Id.  Rule 8 requires a plaintiff to provide a "short and plain statement of the claim showing that the pleader is entitled to relief".  Fed.R.Civ.P. 8(a)(2).  As the law of civil procedure now stands, the pleadings must establish that a plaintiff's claims are "plausible", see Ashcroft v. Iqbal, 129 S.Ct. at 1949 (requiring more than 'unadorned, the-defendant-unlawfully-harmed-me-accusations'), which is to say that "factual enhancement" must be provided to support the "naked assertions" regarding the elements of a cause of action.  See Francis, 588 F.3d at 193.  Rule 9 provides that where fraud is alleged, "a party must state with particularity the circumstances constituting fraud", although intent, knowledge, and states of mind may be alleged generally.  Fed.R.Civ.P. 9(b).

B.  Martinez's FCA and VFATA Claims (Counts I & II)

The False Claims Act, 31 U.S.C. § 3729 et seq., was passed during the Civil War in response to overcharges and other abuses by defense contractors and was intended to create a posse of ad hoc deputies to uncover and prosecute frauds against the government. See Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999).

7

However, it is neither designed to punish *every type* of fraud committed upon the government nor to sanction *every* failure to comply with a government regulation. See Id. at 785-787 (discussing cases). Under the FCA, private litigants may pursue claims on behalf of the Government against anyone who, inter alia,

> "1) knowingly presents, or causes to be presented [to the government] a false or fraudulent claim for payment or approval;
> 2) knowingly makes, uses or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government; or
> 3) conspires to defraud the Government by getting a false claim allowed or paid."

31 U.S.C. §§ 3729(a) & 3730(b); see accord Va. Code. § 8.01-216.3(a)(1)-(3) (substituting "Commonwealth" for "government").[3] A person acts "knowingly" under the FCA when he or she has "1) actual knowledge of the information; 2) acts in deliberate ignorance of the truth or falsity of the information; or 3) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(a)(no specific proof of intent required); see also Va. Code § 8.01-216.3(c)(same). The Fourth Circuit has also found that the statements made must be "material", in the sense that they must have a "natural tendency to influence agency action or [be] capable of influencing agency action", Harrison, 176 F.3d at 785 (citing cases). Thus, falsely certifying compliance with government regulations may serve as a basis for an FCA claim only where the certification is a prerequisite to payment or might otherwise result in a loss to the government. See id. at 786-88 (concept of "false or

---

[3]While other portions of the FCA were amended in 2009, See Pub. L. No. 111-21, § 4(d), 123 Stat. 1617 (2009), the effect of these three provisions does not appear to have changed.

fraudulent claim" encompasses not only billings, but statements made to get contract approved).

With these principles in mind, the Fourth Circuit held in Harrison that liability under the FCA turns on whether "[1] there was a false statement or fraudulent course of action; 2) made of carried out with the requisite scienter; 3) that was material; and 4) that caused the government to pay out money or forfeit moneys due." Id. at 788. Since such a claim necessarily involves allegations of fraud falling under Rule 9(b), a plaintiff must also plead such a claim with particularity; specifically stating the "time, place, and contents of the false representations, as well as the identify of the person making the misrepresentation and what he obtained thereby." Id. at 784 (citing 5 Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure: Civil § 1297 at 590 (2d ed. 1990)). Although it has not issued a definite opinion on the matter, the Fourth Circuit has declined to waive this specificity requirement simply because a plaintiff has alleged a fraudulent scheme, instead of particular acts of fraud. See United States ex rel. Elms v. Accenture, LLP, 341 Fed. Appx. 869, 873 (4th Cir. 2009)(unpublished decision)(finding that allegations which did not set out any details regarding specific instances were insufficient); compare United States ex rel. Grubbs v. Kanneganti, 565 F.3d 180, 192-93 (5th Cir. 2009)(finding that in absence of a presentment requirement in § 3729(a)(3), no requirement of specific allegation regarding submission) and United States ex rel. SmithKline Beecham, Inc., 245 F.3d 1048, 1052 (9th Cir. 2001)(allowing discovery on count where specific allegations were made regarding some but not all fraudulent claims).

In light of the foregoing, it does not appear that Martinez's pleadings regarding fraudulent claims submitted to the United States and Commonwealth are sufficiently particular to proceed under Rule 9(b). The pleading standard set out in <u>Harrison</u> could not be more clear, a plaintiff's conclusion that fraudulent claims were submitted must be supported by particularized allegations regarding not only time, place, and content, but also the identity of the person making the misstatement and what was obtained thereby. <u>See</u> <u>Harrison</u>, 176 F.3d at 783. While Martinez's pleadings do contain specific allegations regarding particular procedures which were not followed and specific forms which were left blank, they are deficient in details linking these omissions to claims actually submitted for payment and to amounts inappropriately paid. Although Martinez implies that reimbursement rates turn on the level of service provided, the Complaint is devoid of any allegations regarding higher payments. Further, while Martinez contends that surgeons did not follow the procedures set out in 42 C.F.R. § 410.27, her Complaint does not establish that Virginia Urology failed to satisfy this provision in another manner. <u>See</u> 42 C.F.R. § 410.27 (a)(iv)(A)(non-professionals may direct services). Nor does it identify any particular statements made in connection with these lithotripsy procedures.

At the most, Martinez's pleadings make allegations regarding the failure of particular physicians to make required certifications before forwarding records to the billing office and their failure to comply with particular Medicare requirements. What the pleadings fail to do is connect these omissions to claims which would otherwise have gone unpaid by the United States. The submission of claims containing material misstatements is a "central

question" in an FCA case, see Harrison, 176 F.3d at 786, and under Rule 9(b), this cannot be left merely to Martinez's "information and belief". Further, while Martinez's allegations regarding her conversations with Coffey establish that the management of Virginia Urology may have been on notice regarding these practices, this knowledge does not give rise to a conspiracy or "fraudulent scheme" in the absence of actual or prospective wrongdoing.[4] Finally, since Martinez's allegations regarding claims against the Commonwealth appear to spring from her contention that false claims were made against the Federal government, Martinez's pleadings fair no better when measured against the VFATA.[5]

In the absence of sufficiently particularized allegations regarding the time, place, and contents of the representations made to the United States and Commonwealth, and the absence of any clear allegations regarding what was gained through the incomplete certifications cited, see Harrison, 176 F.3d at 784, the Court cannot find that Martinez has established a plausible claim to relief under either of the two applicable statutes.[6] Thus, Counts I and II of the Complaint must be dismissed.

---

[4]Virginia Urology notes in its briefs that Martinez has failed to specify which of the three potential theories of FCA liability forms the basis of her Complaint. While the Court is not prepared to hold that this deficiency itself renders her pleadings susceptible to a motion to dismiss, Martinez's apparent failure to match the pleadings to the particulars required by the statute does not help her case. See, e.g., Iqbal, 129 S.Ct. at 1950 (discussing importance of tracing line of reasoning between allegations of fact and legal conclusions).

[5]As Virginia Urology correctly notes, Martinez's Complaint does not specifically connect the submission of the claims described to payments drawn on the Commonwealth.

[6]As the Court finds the Complaint deficient regarding the particularity of the allegations regarding the submission of claims, the Court has no need to reach the question of whether a failure to comply with the Seven Steps would or would not stand as a possible basis for an FCA or VFATA claim.

### C. Martinez's Retaliatory Discharge Claims (Counts III)

Both the FCA and VFATA offer protections to "whistleblower" employees who call attention to violations of the Acts. See 31 U.S.C. § 3730(h) (2008), amended by Pub. L. No. 111-21, § 4(d), 123 Stat. 1617 (2009); accord Va. Code § 8.01-216.8. While Martinez has grouped claims under both of these statutes into a single Count, different standards apply under each and so the theories of liability are considered separately.

The FCA prevents employees from being "discharged, . . . suspended, . . . or in any other manner discriminated against by [an] employer" because of "acts done by the employee . . . in furtherance of [a qui tam] action under this section." 31 U.S.C. § 3730(h). Activities protected include "investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section". Id. The Fourth Circuit has held that in order to make out a prima facie case under this provision, "an employee must prove that 1) he took acts in furtherance of a qui tam suit, 2) his employer knew of these acts, and 3) his employer discharged him as a result of these acts." Eberhardt v. Integrated Design & Const., Inc., 167 F.3d 861, 866 (4th Cir. 1999)(internal citation omitted); see also Zahodnick v. IBM Corp., 135 F.3d 911, 914 (4th Cir. 1997). The Fourth Circuit has found that these requirements may be met where an employee investigates potential wrongdoing and threatens a qui tam action. See Eberhardt, 167 F.3d at 867-68 (refusing to grant judgment as a matter of law to former employer). This Court has focused on whether an

employee specifically warned an employer of the possibility of a civil action, as opposed to merely highlighting illegal behavior.  See Mann v. Heckler & Koch Defense, Inc., 639 F.Supp.2d 619, 627 (E.D. Va. 2009)(employee must raise "distinct possibility of litigation").  See also Yesudian v. Howard Univ., 153 F.3d 731, 740-41 (D.C. Cir. 1998)(discussing "distinct possibility" standard and FCA).

      Martinez's pleadings clearly establish that she raised concerns about Virginia Urology's compliance with various regulations during the provision of anesthesia and surgical services and the manner in which these services were documented prior to their submission to the billing department.  However, at no point does Martinez allege that she filed, or threatened to file, an action under the FCA prior to her termination.  Martinez alleges that she called Coffey's attention to a variety of irregularities in early 2005.  Nevertheless, she remained employed by Virginia Urology for two more years.  Indeed, just prior to her termination, she appears to have been attempting to enter into an independent business venture with the organization.  This is not congruent with the "distinct possibility of litigation" required to bring the FCA's whistleblower protections into play.  See Mann, 639 F.Supp.2d at 627.  While Martinez contends throughout her Complaint that her consistent opposition to ostensibly fraudulent billing practices led to her termination, in this Circuit the protection of § 3730(h) only extends to employees who are found to be developing qui tam claims and who are terminated for that reason.  See Eberhardt, 167 F.3d at 866.  In the absence of any such allegations regarding a civil action, Martinez has failed to state an essential element of her retaliatory discharge claim, and her first theory of liability must fail.

The VFATA protects "any employee who is discharged . . . suspended, or in any other way discriminated against . . . because he has [1] opposed any practice referenced in § 8.01-216.3 or [2] because he has initiated, testified, assisted, or participated in any manner in any investigation, action, or hearing under [the VFATA]." Va. Code § 8.01-216.8. While the first clause of the subsection expands the range of activities protected under the VFATA, compare 31 U.S.C. 3730(h)(2009)(amended version of statute includes similar language), the Act still requires a causal connection between an employee's opposition to some practice and their termination. In this case, we have only Martinez's threadbare and unadorned Virginia-Urology-unlawfully-terminated-me accusation. These naked assertions, without something more in the way of factual enhancement, do not render Martinez's claims sufficiently plausible to allow this second theory of liability to proceed.

Since neither theory of liability is sound, Count III must also be dismissed.

### D. Martinez's Wrongful Discharge Claim (Count IV)

Virginia adheres to the common law rule that an indefinite contract of employment is terminable at will by either party upon reasonable notice. See Miller v. SEVAMP, 234 Va. 462, 465 (1987).[7] However, in so called "Bowman claims", Virginia courts have also recognized a limited exception to this rule where an employee is discharged for exercising

---

[7] While Martinez has alleged that her contract required that certain procedures be followed before her employment could be terminated, she has not stated that her contract was for a definite term, and Virginia law establishes a rebutable presumption that all contracts without a fixed duration are terminable at will. See, e.g., Norfolk Southern Ry. Co. v. Harris, 190 Va. 966, 976 (1950).

14

rights secured to the general public by statute. See Bowman v. State Bank of Keysville, 229 Va. 534, 540 (1987). A prime example of such a right is the voting of corporation shares at issue in the case from which the cause of action takes its name. Id. at 536. In Bowman, employees of a bank were fired when they refused to vote their privately owned shares of company stock in the manner directed by management. Id. at 536-38. In a decision reversing the dismissal of employee claims by a trial court, the Virginia Supreme Court found that since state law conferred on plaintiffs a right to vote as stockholders and state law "contemplates that the right to vote shall be exercised free of duress", employers could not be allowed to frustrate the purpose of the statute by conditioning continued employment on the casting of particular votes. Id. at 540. More recent decisions have emphasized that this exception is a narrow one, arising only from the violation of "public" policy set out in laws designed to protect the property rights, personal freedoms, health, safety, or welfare of the people in general. See Miller, 234 Va. at 468 (no cause of action for violation of "private rights or interests"); see also Rowan v. Tractor Supply Company, 263 Va. 209, 213 (2002)(firing of employee in effort to prevent her in testifying in criminal case did not give rise to Bowman claim).

Here, again, the absence of a clear causal connection between Martinez's allegations regarding her opposition to certain practices and her ultimate termination is fatal to her claim. While Martinez has alleged that state laws, such as Virginia Code § 54.1-2909, require physicians to report professional malpractice or misconduct, a two year gap remains between the discussions alleged and her termination. Further, her Complaint contains no

15

allegations that any such reports were either made or threatened. Finally, given the narrow reading that Virginia's own courts have given <u>Bowman</u>, it is not clear to this Court that either the VFATA or the Reporting Requirements for Physicians could serve as the basis for a wrongful discharge claim. Since the pleadings do not allow the Court to draw a reasonable inference that Virginia Urology engaged in the type of wrongdoing prohibited by <u>Bowman</u>, this Count must also be dismissed.

## IV. CONCLUSION

In light of the foregoing, the Court concludes that Martinez's has failed to state a claim upon which relief can be granted with regards to Counts I, II, III & IV. As the allegations in her pleadings do not provide sufficient support for the legal conclusions contained in these Counts of the Complaint, Virginia Urology's Motion to Dismiss is granted.

An appropriate Order shall issue.

/s/
James R. Spencer
Chief United States District Judge

ENTERED this  29th  day of July 2010